CLOSED

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____
                                          :
CARRIE OSHO,                              :
                                          :
                Plaintiff,                :        Civ. No. 05-3030 (JAP)
                                          :
        v.                                :
                                          :        **OPINION**
COMMISSIONER OF SOCIAL SECURITY,          :
                                          :
                Defendant.                :
_____:

APPEARANCES:

Abraham S. Alter, Esq.
Langton & Alter
P.O. Box 1798
Rahway, NJ 07065
        *Attorney for Plaintiff*

Christopher Christie
United States Attorney
Susan Reiss
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
        *Attorneys for Defendant*

PISANO, District Judge.

        Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff Carrie Osho ("Plaintiff" or

"Osho") seeks review of a final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her application for Disability Insurance Benefits

("DIB") and Supplemental Security Income Benefits ("SSI").  The Court has jurisdiction to

review this matter under §§ 405(g) and 1383(c)(3) and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  The issue presented is whether the Commissioner's decision to deny Plaintiff's application for DIB and SSI is supported by substantial evidence.  For the reasons stated below, the Court finds that there is substantial evidence to support the Commissioner's decision.  Accordingly, the Court denies Plaintiff's appeal.

## I.  BACKGROUND

### A.  Plaintiff's Personal and Medical History

Plaintiff is a fifty-one year old woman from Salem, New Jersey who currently suffers from depression and borderline intellectual functioning, in addition to some physical ailments.[1] Though there is conflicting evidence regarding Osho's educational background, it appears that she finished the ninth grade and possibly obtained a General Equivalency Diploma.  Plaintiff's vocational training consists of the completion a nurse's aid training program in 1972.  Ohso's work history reveals that she has held a variety of different jobs throughout her adult life, including nurse's aide, farm worker, and cook helper.  Most recently, Plaintiff worked as a cook helper for Rutgers University dining services from 1994 to 2001.  She was terminated for taking food home from the dining facility.  At the time of her application for benefits, Osho performed work in a soup kitchen as a requirement to remain eligible for welfare.  As the ALJ noted, however, such work does not qualify as substantial gainful activity.

Plaintiff alleges that she became disabled on October 20, 2002.  In April 2003, Dr. Pradip

---

[1] Plaintiff has not sought review of the ALJ's findings with respect to her claimed physical impairments.

Gupta ("Dr. Gupta") gave Osho a mental status examination and found her to be "intermittently depressed," but also "alert" and "oriented."  (Administrate Record ("AR") 186).  Further, Dr. Gupta opined that Plaintiff possesses average "reasoning, judgment and intelligence," as well as the ability to understand verbal commands and complete three-step commands.  (*Id.*).  He found her global assessment of functioning ("GAF") to be approximately 50.  (*Id.*).  In May 2003, Dr. Theresa Miskimen ("Dr. Miskimen"), a psychiatrist with the University Behavioral HealthCare Center at the University of Medicine and Dentistry of New Jersey ("UMDNJ"), diagnosed Plaintiff with a mood disorder and post-traumatic stress disorder and found her GAF to be 51.  (AR 213).  Dr. Miskimen prescribed Lexapro, Buspar, and Trazadone.  (AR 208).  After reexamining Plaintiff in January 2004, Dr. Miskimen determined that the prescribed medications had ameliorated Plaintiff's symptoms, but that Plaintiff's use of alcohol and marijuana had a negative impact on her psychological health.  (AR 219-27).  Dr. Miskimen found that Osho's GAF was 55, that Osho was "fully oriented," but that she possesses below average intelligence.  (AR 226-27).  Dr. Miskimen repeated her earlier diagnosis of mood disorder and post-traumatic stress disorder.  (AR 227).

Plaintiff filed an application for disability benefits on February 14, 2003.  The Commissioner denied that application both initially and upon reconsideration.  Upon Plaintiff's request, a hearing was held on April 27, 2004 before Administrative Law Judge Joel H. Friedman (the "ALJ").  During the hearing, the ALJ granted Osho's request for a consultive psychological evaluation.  The evaluation, performed by Jackie Farnese ("Farnese"), Psy.D. in June 2004 revealed that Plaintiff has a full-scale IQ of 69.  (AR 296-97).  Additionally, Farnese determined that Osho has borderline intellectual functioning and a GAF rating of 50.  (*Id.*).  Based on that

evaluation and the other relevant medical evidence, the ALJ found, in his December 23, 2004 written decision, that Plaintiff's depression and borderline intellectual functioning constituted severe impairments within the meaning of the Social Security regulations.  (AR 18).  The ALJ concluded, however, that the impairments were not "severe enough to meet or medically equal" a listed impairment under the regulations.  (*Id.*).  In support of his conclusion, the ALJ noted that the administrative record contained "no evidence of intellectual compromise prior to the claimant's attainment of age 22, as required by [the mental disorder] listing[s]" and that Osho's "intellectual capacity had never previously precluded her from performing substantial gainful activity in the past."  (*Id.*).

The ALJ further concluded that Osho retains the residual functional capacity to perform "unskilled jobs involving simple, repetitive tasks at all exertional levels" including her past relevant work as a cook helper which, the ALJ noted, would require duties similar to those Plaintiff currently performs working in a soup kitchen as a requirement for her welfare eligibility.  (AR 20-21).  In reaching this conclusion, the ALJ relied on evidence in the record that Plaintiff's depression and borderline intellectual functioning have not limited her ability to conduct normal day-to-day activities or resulted in a significant limitation on "her ability to sustain concentration, persistence and pace."  (AR 20).  The ALJ also noted that, though he gave due consideration to Osho's subjective allegations, he found her credibility to be "sorely lacking."  (*Id.*).  Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Act and regulations at any time through the date of the decision."  (AR 22).  On April 8, 2005, the Appeals Council affirmed the ALJ's decision, finding "no reason under [their] rules to review the Administrative Law Judge's decision."  (AR 5).

4

Plaintiff's appeal challenges the ALJ's decision two grounds.  First, Osho contends that there is not substantial evidence supporting the ALJ's finding that her impairments do not meet or equal one or more of the Commissioner's impairment listings under 20 C.F.R. § 404, Subpart P, Appendix 1.  Second, Osho asserts that the ALJ erred in concluding that she retains the residual functional capacity to perform past relevant work.

## II.  DISCUSSION

### A.  Standard of Review

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision.  *See* 42 U.S.C. 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence, therefore, may be slightly less than a preponderance.  *See Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality.  *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  As such, "a court must take into account whatever in the record fairly detracts from its weight."  *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted).  The Commissioner has a corresponding duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting

competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987).  As the Third

Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to

meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently
> explained the weight he has given to obviously probative exhibits, to say that his
> decision is supported by substantial evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to determine whether the
> conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).  Nonetheless, the district court is not

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."

*Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B.  Establishing a Disability Under the Act

"In order to establish a disability under the Social Security Act, [a plaintiff] must

demonstrate some medically determinable basis for an impairment that prevents him from

engaging in any substantial gainful activity for a statutory twelve-month period."  *Burnett v.*

*Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000) (internal quotations and citations

omitted).  Further, a claimant must demonstrate that the severity of his impairment(s) renders

him "not only unable to do his previous work" but also, "considering his age, education, and

work experience," unable to "engage in any other kind of substantial gainful work which exists in

the national economy."  42 U.S.C. § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 404.1520, the Commissioner employs the following five-step

sequential analysis to evaluate each case and determine whether a claimant is "disabled" or "not

disabled":

1.      If the claimant currently is engaged in substantial gainful employment, he

will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, a finding of disability will be entered.  On the other hand, if the claimant can perform other work, he will be found not to be disabled.

20 C.F.R. § 404.1520(b)-(f).  This sequential analysis requires the shifting of burdens of proof. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994); *Wallace v. Sec'y of Health and Human Serv.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of proof at the first four steps of the analysis.  The burden then shifts to the Commissioner at the final step to prove there is other work in the national economy which the claimant can perform in light of her residual functional capacity, age, education, and work experience.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

### C.  The Court Affirms the ALJ's Decision

### 1.  There is Substantial Evidence to Support the ALJ's Finding that Plaintiff's Impairments Do Not Meet or Equal a Listed Impairment

Plaintiff contends that the ALJ erroneously concluded that her cognitive impairment does not meet or equal Listed Impairment § 12.05 as set forth in 20 C.F.R., Part 404, Subpart P,

Appendix 1.  Specifically, Osho agues that she is presumptively disabled based on her depressive disorder and IQ score of 69.  As explained below, however, the Court finds that there is substantial evidence to support the ALJ's finding that Osho's impairment does not meet the requirements of § 12.05.

Pursuant to the Commissioner's regulations, an impairment "is medically equivalent to a listed impairment in Appendix 1 if the medical findings are at least equal in severity and duration to the listed findings."  20 C.F.R. § 404.1526(a).  Section 12.05 of the Listing of Impairments defines mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. § 404, Subpt. P, App. 1 § 12.05.  In addition to satisfying that threshold, a claimant must demonstrate that he or she meets the requirements in sections A, B, C, or D of § 12.05.  Section C, which Plaintiff claims she meets, requires the showing of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. § 404, Subpt. P, App. 1 § 12.05C.

Plaintiff challenges the ALJ's conclusion that her impairment does not satisfy § 12.05 because she failed to demonstrate onset of the impairment before age twenty-two.  As an initial matter, contrary to Plaintiff's suggestion, the Court finds that the ALJ correctly construed this requirement.  Indeed, the statutory language and relevant caselaw provide that a claimant does not satisfy § 12.05 unless there is "evidence demonstrat[ing] or support[ing] onset of the impairment before age 22."  20 C.F.R. § 404, Subpt. P, App. 1 § 12.05; *Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003).  As Plaintiff concedes, she did not present any evidence suggesting

8

that the onset of her impairment occurred during the developmental period, *i.e.*, before she turned twenty-two.  That alone is sufficient to affirm the ALJ's finding that Osho is not disabled under § 12.05.  *See Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (finding that claimant "cannot be found disabled" because he failed to show that onset "occurred during the developmental period").  Ignoring the lack of evidence with respect to the onset of her impairment, Plaintiff argues that her current IQ score of 69 places her in the impairment range set forth in § 12.05C and is proof that she has been mentally retarded for her entire life.  A current IQ score, however, is "not sufficient to establish deficient intellectual functioning initially manifested during the developmental period (before age 22)."  *Id.*

Moreover, there is ample evidence to support the ALJ's conclusion that her impairment does not meet or equal a Listed Impairment.  First, Plaintiff's mental impairment did not affect her ability to work, as demonstrated by her substantial work history.  *See id.* at 1185 ("Williams' mental retardation is further put into doubt by the fact that Williams did, in fact, maintain a job for most of his adult life.").  Second, no medical source stated that Osho is mentally retarded. Dr. Gupta concluded that Plaintiff's reasoning, judgment and intelligence is average and that she can easily perform three-step commands.  (AR 186).  Additionally, treatment notes from UMDNJ indicate that Osho possesses below average to average intelligence and that, during her evaluations, she was alert and oriented.  (AR 212, 225, 226).  Third, there is evidence indicating that Osho is able to perform activities of daily life, such as grooming herself, paying bills, maintaining a home, and using transportation.  (AR 186, 209).  Fourth, Osho, who testified that she completed the ninth grade, denied that she was enrolled in special education classes.  (AR 52, 107).  Thus, there is substantial evidence both that Plaintiff's impairment did not manifest itself

during the developmental period and that, in any event, the impairment does not rise to the level of a Listed Impairment.[2]

Notwithstanding the foregoing evidence, Plaintiff argues that the ALJ erred in concluding that she exhibits moderate, as opposed to marked, intellectual restrictions.  The regulations define a marked limitation as one that is "more than moderate but less than extreme."  20 C.F.R. § 404, Subpt. P, App. 1 § 12.  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [one's] ability to function independently, appropriately, effectively, and on a sustained basis."  *Id.*  The regulations instruct ALJs to consider the following factors when determining whether a restriction is moderate or marked:  a claimant's ability to perform activities of daily living, to function socially, and to sustain focused attention long enough to complete work tasks.  *Id.*  As explained above, the record evidence establishes that Osho is capable of performing daily living activities, that she is fully oriented, and has the ability to complete work tasks.  Thus, the Court rejects Plaintiff's argument that the ALJ erred in concluding that Osho exhibits moderate, as opposed to marked, intellectual restrictions.[3]

Plaintiff also contends that the ALJ failed to supply a rationale for his finding that Osho's

_____

[2] The evidence also provides support for the ALJ's conclusion that her borderline intellectual functioning and depressive disorder, in combination, fall short of a listed impairment or an impairment that is medically equivalent to any such listing.

[3] Plaintiff also argues that the ALJ improperly relied on the opinion of a state agency physician because, in Plaintiff's view, such physicians are biased against claimants.  Pursuant to the regulations, however, opinions of state agency medical or psychological consultants, including opinions as to whether or not a claimant's impairment meets or medically equals a listing, are among the kinds of evidence an ALJ may consider.  *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1527(f)(1); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991) (stating that ALJ may rely on opinions of non-examining physicians which are consistent with the record).

depressive disorder does not rise to the requisite level of severity.  The ALJ's written decision makes clear, however, that the ALJ relied on the evidence discussed above—Plaintiff's substantial work history, ability to perform activities of daily life, and function socially without significant limitation—to support his conclusion that Plaintiff's depressive disorder is not severe within the meaning of § 12.04.  Further, Osho fails to identify any evidence that conflicts with the ALJ's finding.

### 2.  There Is Substantial Evidence to Support the ALJ's Finding that Plaintiff Retains Residual Functional Capacity to Perform Past Relevant Work

Plaintiff challenges the ALJ's finding with respect to Osho's ability to perform past relevant work because, in her view, the ALJ attributed controlling weight to the fact that Osho performs work in a soup kitchen, which she does to remain eligible for welfare.  Plaintiff contends that this activity is not work, but rather an obligation that she must fulfill in order to avoid homelessness and starvation.  As a result, Plaintiff submits, her "work" at the soup kitchen cannot be the "decisional justification" for the ALJ's finding that she is not disabled.

Plaintiff's argument, however, mis-characterizes the basis for the ALJ's conclusion and the weight he afforded to Osho's work at the soup kitchen.  As an initial matter, contrary to Plaintiff's assertions, the ALJ specifically noted that Osho's activities at the soup kitchen do not constitute substantial gainful activity.  Further, in reaching the conclusion that Osho retains residual functional capacity to perform past relevant work, the ALJ did not afford controlling weight to the fact that Plaintiff works at a soup kitchen, ostensibly engaging in tasks similar to the ones she performed as a cook helper at Rutgers University from 1994 to 2001.

Instead, the ALJ undertook a two-part analysis to determine (1) the nature of Plaintiff's

11

residual functional capacity and (2) whether that capacity allowed her to perform past relevant work.  First, the ALJ found that Osho can perform unskilled jobs involving simple, repetitive tasks.  In reaching that conclusion, he relied expressly on the reports of Dr. Gupta, progress notes from Dr. Miskimen and the UMDNJ staff, and the opinions of state agency medical consultants—all of which support the ALJ's determination that Plaintiff is capable of performing the basic mental demands associated with unskilled labor.  (AR 20-21).  Second, the ALJ found that the position of cook helper is one of unskilled labor according to the United States Department of Labor Dictionary of Occupational Titles.  (AR 21).  He therefore concluded that Plaintiff's residual functional capacity to perform unskilled labor allowed her to perform her past relevant work as a cook helper both as she actually performed it and as it is generally performed in the national economy.  (AR 21-22).  Plaintiff does not point to a single piece of evidence that contradicts this finding.  Thus, the Court is satisfied that there is substantial evidence to support the ALJ's conclusion that Osho retains the residual functional capacity to perform her past relevant work as a cook helper.

As a final note, although the Court welcomes zealous advocacy, it is disappointed in the caustic tone of Plaintiff's brief and, in particular, Plaintiff's attacks on the ALJ's objectivity and competence.  Plaintiff's brief characterizes the ALJ's decision as "mean-spirited" "nonsense," accuses the ALJ of "slight [sic] of hand" intended to "misdirect the thinking of a reviewing authority" and of "double talk[ing]," and insinuates that the ALJ generally is biased against claimants.  To the extent that there are legitimate concerns about an ALJ's objectivity in a particular case, the Court encourages parties to raise that issue on appeal.  Where, as here, counsel merely seeks to discredit the ALJ for the purpose of bolstering his substantive

arguments, it detracts from the environment of professionalism and civility that we, as members of the legal profession, strive to maintain.  The Court is confident that Plaintiff's counsel can, and in the future will, advocate his client's position without needless attacks on the ALJ.

**III.  CONCLUSION**

For the reasons stated above, the Court finds that there is substantial evidence to support the ALJ's findings and dismisses Plaintiff's appeal.  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: February 28, 2007

13